UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-cv-00162-LLK

JEREMY L. JOHNSON                                               PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claims for Social Security disability benefits.

The fact and law summaries of Plaintiff and the Commissioner are at Doc. 20 and Doc. 26.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  [Doc. 14].

Because the Administrative Law Judge's (ALJ's) rejection of Dr. Lopez-Suescum's diagnosis of complex regional pain syndrome (CRPS) and his opinion that Plaintiff's right groin pain precludes prolonged sitting and standing is not supported by substantial evidence in the administrative record, this Opinion will REMAND the matter to the Commissioner for a new decision.

**Procedural history**

Plaintiff was born in 1985, with an inguinal hernia.  [Administrative Record, Doc. 13 at 1262].  An inguinal hernia occurs when part of the intestine bulges through a weak spot in the inguinal canal, which is a triangle-shaped opening between layers of abdominal muscle near the groin.  *Heard v. Sheahan*, 148 F. App'x 539, 540 (7th Cir. 2005).  The hernia was repaired using surgical mesh, which was intended to remain in place indefinitely. [Doc. 13 at 1262].  The reparation failed in 2009 and again in 2015, which necessitated two additional hernia repairs.  *Id.*  Plaintiff filed a lawsuit alleging medical malpractice in relation to the surgeries and/or products liability in relation to the mesh.  *Id.* at 1433.  The ALJ

acknowledged that, after three unsuccessful hernia repairs, treating physicians may be reluctant to get involved, fearing they might do more harm than good. *Id.* at 114.

Plaintiff testified that he has struggled his entire life with hernia and hernia repair issues and that, after the third repair in 2015, he "never got better" and did not return to work. [Doc. 13 at 1260, 1433, 1438, 1444]. In 2016, when he realized his pain was not getting any better, Plaintiff became depressed and attempted to commit suicide by overdose. *Id.* at 110, 118, 1043. Plaintiff alleges chronic right groin pain, which radiates to the right testicle and prevents him from sitting or standing for long periods of time. *Id.* at 114, 1260, 1438, 1440.

In February 2017, at the conclusion of the prior administrative hearing, the ALJ sent Plaintiff to a consultative medical evaluation regarding the limiting effects of his alleged groin pain. [Doc. 13 at 97]. In March 2017, Plaintiff was examined at the request of the Commissioner by Edgar Lopez-Suescum, M.D. [Doc. 13 at 1260]. Dr. Lopez-Suescum observed, in Plaintiff's right groin area, a "rather indurated" "ill-defined bulge in the right inguinal region," which "seems to be sort of fibrotic and tender on palpation." *Id.* at 1261. Dr. Lopez-Suescum found that Plaintiff's "motor strength of the right lower extremity iliopsoas muscle is 0/5 on account of the pain of the right groin and he has developed atrophy of the muscles of the thigh anterior aspect." *Id.* at 1262. Dr. Lopez-Suescum diagnosed "complex pain syndrome of the right groin area with radiation of pain to the external genital especially the right testicle." *Id.* Dr. Lopez-Suescum opined, among other things, that the groin pain would likely limit Plaintiff to 1 hour (each) of sitting, standing, and walking per 8-hour workday, with "lay[ing] down at least 5 hours" during the remaining 5 hours. *Id.* at 1262, 1265-66.

In October 2017, the ALJ issued the Commissioner's prior final decision, finding that Plaintiff is not disabled because he retains the ability to perform a significant number of sedentary jobs in the national economy. [Doc. 13 at 23]. The ALJ identified seven reasons for giving "little weight" to Dr. Lopez-

Suescum's medical opinion, which would preclude even sedentary work. *Id.* at 20. The ALJ's decision did not mention Dr. Lopez-Suescum's diagnosis of complex pain syndrome. *Id.*

In January 2019, the Court entered a Memorandum Opinion and Order, remanding this case to the Commissioner for a new decision. [Doc. 13 at 1518-25]. The Opinion treated Dr. Lopez-Suescum's diagnosis of complex pain syndrome as a diagnosis of complex regional pain syndrome (CRPS) as contemplated by Social Security Ruling (SSR) 03-2p, 2003 WL 22399117 ("Evaluating cases involving reflex sympathetic dystrophy syndrome / complex regional pain syndrome"). *Id.* Chronic regional pain syndrome (CRPS) is a chronic pain syndrome resulting from trauma or surgery to a body part. SSR 03-2p, 2003 WL 22399117 at *1. It is characterized by sympathetic (fight or flight) nervous system dysfunction at the site of the precipitating trauma, and the pain is characteristically out of proportion to the severity of the precipitating injury. *Id.* Objectively, one may observe changes in the blood vessels, skin (color and texture), and musculature (atrophy and mobility). *Id.* Additionally (as in the present case), there may be "extreme sensitivity to touch or pressure" applied to the affected area. *Id.* This Court's Opinion concluded that the ALJ's decision did not identify substantial reasons for discounting Dr. Lopez-Suescum's opinion that Plaintiff's groin pain precludes prolong sitting and standing. *Id.* at 1262, 1265-66.

In March 2019, Plaintiff complained to treating sources that his groin pain was getting worse. [Doc. 13 at 1433]. In May 2019, John L. Korba, M.D., Bluegrass Surgical Associates, diagnosed chronic pain secondary to mesh status-post hernia repair. [Doc. 13 at 1943]. Dr. Korba ordered a CT scan to determine if nerve release was a viable option, but Plaintiff's insurance paid for only a limited scan, which indicated no recurrence of hernia. *Id.* at 1436. Dr. Korba sent Plaintiff to aqua therapy, which Plaintiff attended from February through June of 2019. *Id.* To date, Dr. Korba has not ruled out the possibility of corrective surgery. *Id.* at 1437.

In August 2019, the ALJ issued the present decision, which is before the Court on judicial review. [Doc. 13 at 1399-1413]. In addition to addressing the issues related to Dr. Lopez-Suescum's CRPS

3

diagnosis, the ALJ consolidated and decided Plaintiff's more recent application for benefits, which he filed simultaneously with the appeal of the ALJ's prior decision. *Id.* at 1399. The ALJ's present decision concluded that Plaintiff has not been under a disability from June 5, 2014 (when he alleges he became disabled) through August 13, 2019 (the date of issuance of the present decision). *Id.* at 1413.

The ALJ's present decision is substantially the same as the prior decision except that, in support of discounting Dr. Lopez-Suescum medical opinion, the ALJ rejected Dr. Lopez-Suescum's CRPS diagnosis in light of the requirements of SSR 03-2p. [Doc. 13 at 1410 rejecting 1262]. According to the ALJ, this rendered unsupported Dr. Lopez-Suescum's opinion that Plaintiff's groin pain precludes prolonged sitting and standing. *Id.* at 114, 1260, 1438, 1440.

**The ALJ's rejection of Dr. Lopez-Suescum's CRPS diagnosis is not supported by substantial evidence.**

The ALJ's analysis of Dr. Lopez-Suescum's CRPS diagnosis began by noting that SSR 03-2p requires that a CRPS diagnosis be supported by evidence of "exaggerated pain levels AND (a.) swelling, (b.) autonomic instability (changes in skin color, skin texture, sweating, or skin temperature), (c.) abnormal hair growth, (d.) osteoporosis, or (e.) involuntary movement of the affected areas." [Doc. 13 at 1407 quoting SSR 03-2p, 2003 WL 22399117, at *2]. The ALJ did not doubt that Plaintiff reports exaggerated right groin pain levels but found that none of factors (a) through (e) is present. *Id.* at 1407, 1408.

The ALJ's decision identified three reasons for rejecting Dr. Lopez-Suescum's CRPS diagnosis. For the reasons below, none is supported by substantial evidence.

First, according to the ALJ, Dr. Lopez-Suescum observed no autonomic instability (factor (b), above). [Doc. 13 at 1407, 1408].

As noted above, upon examining Plaintiff's right groin area, Dr. Lopez-Suescum observed a "rather indurated" "ill-defined bulge in the right inguinal region," which "seems to be sort of fibrotic and tender on palpation." [Doc. 13 at 1261]. In other words, Plaintiff's skin (in or near the area of surgical repairs) was "rather indurated" and "sort of fibrotic." "Indurated" is defined as "hardened; rendered hard."

4

Dorland's Medical Dictionary. While neither the Court nor the ALJ is a medical expert, from a lay (non-medical) perspective, it is not apparent why the hardened, fibrotic bulge observed by Dr. Lopez-Suescum would not qualify as a "change in ... skin texture," a type of "autonomic instability." SSR 03-2p, 2003 WL 22399117, at *2.

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Comm'r*, 98 F.3d 966, 970 (7th Cir. 1996)). "As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms." *Rudd v. Comm'r*, 531 F. App'x 719, 726 (6th Cir. 2013) (quoting *Nguyen v. Comm'r*, 172 F.3d 31, 35 (1st Cir. 1999)). "Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Neal v. Comm'r*, No. 18-10709, 2019 WL 2208555, at *16 (E.D. Mich. Jan. 31, 2019) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Second, the ALJ recognized that Dr. Lopez-Suescum observed that Plaintiff's "motor strength of the right lower extremity iliopsoas muscle[1] is 0/5 on account of the pain of the right groin and he has developed atrophy of the muscles of the thigh anterior aspect." [Doc. 13 at 1408 recognizing 1262]. However, according to the ALJ, this one-time observation was inadequate for diagnostic purposes because SSR 03-2p requires that the autonomic instability (change in skin texture) be observed **before** subsequent development of muscle atrophy and weakness:

> *ALJ:* Exhibit 48F [Dr. Lopez-Suecum's report] describes muscle atrophy and weakness, but those are clinical findings expected out of "**persistent clinical progression**" of the impairment, meaning one would expect – and SSR 03-02p requires – prior findings of swelling, autonomic instability, etc. to support a diagnosis. Atrophy and weakness may come, but only later. ... Further, the diagnosis of CRPS is not supported because the longitudinal evidence does not describe the ... autonomic instability ... that would inevitably precede any muscle atrophy from CRPS.

[Doc. 13 at 1408 *(emphasis added)* (quoting SSR 03-2p, 2003 WL 22399117, at *2)].

---

[1] The iliopsoas muscle is one of the largest and most powerful hip flexors responsible for movement of the leg and trunk. *Maillet v. Colvin*, No. 3:12-CV-01209, 2014 WL 940174, at *7 (M.D. Pa. Mar. 11, 2014)

5

Contrary to the above interpretation of SSR 03-2p by the ALJ, SSR 03-2p simply indicates that CRPS may (but need not) progress to muscle atrophy:

> *SSR 03-2p:*  Reported pain at the site of the injury may be followed by complaints of muscle pain … in the affected region.  Further, signs of autonomic instability …. may develop in the affected region. … Muscle atrophy and contractures can also develop.  **Persistent clinical progression** resulting in muscle atrophy and contractures, or progression of complaints of pain to include other extremities or regions, in spite of appropriate diagnosis and treatment, hallmark a poor prognosis.

SSR 03-2p, 2003 WL 22399117, at *2 *(emphasis added)*.  In other words, muscle atrophy is not necessary to diagnose CRPS, nor must the atrophy appear after the autonomic instability.

Third, the ALJ rejected Dr. Lopez-Suecum's CRPS diagnosis because he was the **only** physician to make such a diagnosis:

> *ALJ:*  The consultative examiner diagnosed the claimant with CRPS, but the diagnosis is not consistent with roughly 5 years' worth of diagnoses from treating providers.  Since the reemergence of the claimant's hernia [for the third time in 2015], he has been seen by several pain specialists – and one would think a **pain** syndrome would be in their wheelhouse – who did not diagnose him with CRPS ….  While it may be possible that, in a moment that would give Gregory House, M.D.,[2] goosebumps, the consultative examiner at 48F [Dr. Lopez-Suecum] made an unlikely but correct diagnosis that no other provider could see, the preponderance – read "vast majority" – of the evidence fails to describe the necessary findings set forth in SSR 03-02p to support a diagnosis of CRPS.

[Doc. 13 at 1407-08].

Dr. Lopez-Suecum may have been the only physician to diagnose CRPS in the last 5 years -- not because he is a veritable "Gregory House, M.D.," but simply -- because he is the only physician to have examined Plaintiff's right groin area.  The ALJ acknowledged that, after three unsuccessful hernia repairs and pending litigation, treating physicians may be reluctant to get involved.  [Doc. 13 at 114].  Dr. Lopez-Suecum got involved because the ALJ asked him to do so.  *Id.* at 97.  While it may have been in their

---

[2] Gregory House, M.D., is the title character of the American medical drama series House, who is the Head of Diagnostic Medicine at the fictional Princeton-Plainsboro Teaching Hospital.  Wikipedia.

"wheelhouse" to diagnose CRPS, the pain management specialists were (for whatever reason) more focused on Plaintiff's cervical pain than his groin pain.[3]

### The ALJ's evaluation of the limiting effects of Plaintiff's right groin pain is not supported by substantial evidence.

The ALJ found that Plaintiff suffers from severe, or vocationally significant, opioid abuse. [Doc. 13 at 1401]. This finding is supported by substantial evidence. For example, in 2016, after his third hernia repair, when he realized his pain was not getting any better, Plaintiff became depressed and attempted to commit suicide by overdose. [Doc. 13 at 110, 118, 1043]. In March 2017, after the first administrative hearing, licensed psychological practitioner Annette Freel, M.S., evaluated Plaintiff at the request of the Commissioner, and she diagnosed misuse of opioid medication. *Id.* at 1274, 1278.

In evaluating the limiting effects of Plaintiff's pain, the ALJ found that "[t]he District Court found the claimant's pain complaints are supported by Dr. Lopez-Suescum's diagnosis of CRPS, but as the diagnosis is not supported the claimant's pain complaints are suspect in light of his history of opioid abuse." *Id.* at 1410. This is finding is not supported by substantial evidence because (for the reasons discussed above) the ALJ's rejection of Dr. Lopez-Suescum's CRPS diagnosis is not supported by substantial evidence.

### A judicial award of benefits is unwarranted.

When (as here) a reviewing court determines that an ALJ's decision is not supported by substantial evidence, it must determine whether to judicially award benefits or remand for further administrative proceedings. *Wiser v. Comm'r*, 627 F. App'x 523, 526 (6th Cir. 2015). A judicial award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes

---

[3] Even if a CRPS diagnosis is unsupported, Plaintiff's pain and limitations would be just as real and just as limiting if caused by recurrence of hernia, nerve damage / entrapment following three unsuccessful hernia repair surgeries, bodily reaction to the mesh itself, or any other medical cause.

a plaintiff's entitlement to benefits." *Id.* (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

As the above procedural history indicates, there have already been two ALJ decisions and one judicial remand in this case. Admittedly, it seems unlikely that a second remand for a third decision would result in the ALJ's identification of substantial lay (non-medical) reasons for rejecting Dr. Lopez-Suescum's diagnoses and medical opinions.

Nevertheless, while this Court lacks authority to order it, the ALJ might request a second consultative examination and/or testimony from a medical expert regarding Plaintiff's right groin pain. An ALJ does not improperly "play doctor," *Simpson*, 344 F. App'x at 194, when he merely decides to credit one non-treating medical source opinion over another. *Kidd v. Comm'r*, No. 10-CV-28-JMH, 2010 WL 4512822, at *3 (E.D. Ky. Nov. 2, 2010). Indeed, the Sixth Circuit has long recognized that weighing of competing medical opinions is well within an ALJ's province. *Id.* (citing *Acquaviva v. Sec'y*, 725 F.2d 682, 682 (6th Cir.1983)). Therefore, a judicial award of benefits is unwarranted as the administrative record may yet be expanded to include a substantial medical basis for discounting Dr. Lopez-Suescum's medical diagnoses and opinions.

## ORDER

Because the ALJ's rejection of Dr. Lopez-Suescum's diagnosis of complex regional pain syndrome (CRPS) and his opinion that Plaintiff's right groin pain precludes prolonged sitting and standing is not supported by substantial evidence in the administrative record, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

February 18, 2022

Lanny King, Magistrate Judge
United States District Court